UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 25-cv-20481-BLOOM/Elfenbein

ALZAMEND NEURO, INC.,

     Plaintiff,

v.

BIORASI, LLC,

     Defendant.

_____/

## ORDER ON MOTION TO DISMISS

**THIS CAUSE** is before the Court upon Defendant's Motion to Dismiss Amended Complaint ("Motion"), ECF No. [49]. The Plaintiff filed a Response in Opposition ("Response"), ECF No. [60] and the Defendant filed a Reply in Support ("Reply"), ECF No. [62]. The Court has carefully reviewed the Motion, the record in this case, the applicable law, and is otherwise fully advised. For the reasons discussed below, the Motion is granted in part and denied in part.

## I.  BACKGROUND

Alzamend Neuro, Inc ("Alzamend") is a clinical-stage biopharmaceutical company focused on developing treatments for Alzheimer's disease and other neurodegenerative diseases. ECF No. [40] ¶ 1. To advance the development of a new treatment called ALZN002, Plaintiff sought to conduct a phase I/IIA clinical trial to evaluate its safety, tolerability, and preliminary efficacy. ECF No. [40] ¶ 4-5.

In February 2023, Alzamend retained Biorasi, LLC. ("Biorasi") to conduct a first-in-human, randomized, double-blind, placebo controlled, parallel-group, Phase I/II clinical trial for ALZN002. ECF No. [40] ¶ 6. Alzamend and Biorasi executed a Master Services Agreement for Clinical Research Organization Services ("MSA"), under which Biorasi agreed to oversee aspects

of the clinical trial. ECF. No [40] ¶ 17. The MSA incorporated other writings into the contractual terms, including an executed Work Order ("Work Order"). The Work Order contained a list of services to be performed by Biorasi. ECF No. [40] ¶ 18. Before executing the MSA, Alzamend and Biorasi executed a Letter of Intent ("LOI"), effective January 2, 2023, pursuant to which Alzamend paid Biorasi $437,466.00 for set-up services. After signing the LOI, Biorasi provided assurances that it understood Alzamend's needs and expectations for clinical sites and represented it could secure sites with committed leukapheresis centers and experience for the clinical trial. ECF No [40] ¶ 26. Alzamend chose Biorasi to act as the Clinical Research Organization based upon that representation. ECF No. [40] ¶ 27.

Alzamend and Biorasi finalized a protocol for the ALZN002 trials. ("ALZN002-01 Protocol"). ECF No. [40] ¶ 30. Biorasi was responsible for supervising the flow of materials and information during the study, given that Alzamend was to be "blinded' and incapable of performing such supervision. ECF No. [40] ¶ 32. In the trial "blinded personnel could not know whether a subject was assigned to the treatment group or the placebo group, while the unblinded personnel were aware of a subject's status. ECF No. [40] ¶ 33.

Ultimately, the testing sites proposed by the Biorasi did not have the necessary leukapheresis capabilities, and Alzamend was forced to create a leukapheresis center for use in the study, causing at least a six-month delay in the clinical trial. ECF No. [40] ¶ 35. Three facilities participated in the clinical trial providing different services: the IMIC Clinical Research Center ("IMIC') which was located by the Plaintiff, The University of Miami, and the First Excellent Research Group. ECF No. [40] ¶ 37.

"The MSA required that the Defendant perform services 'in compliance with this agreement, the applicable approved protocol, [and] applicable professional standards. . . using a degree of

skill, diligence and expertise consistent with industry standards". ECF No. [40] ¶ 40. Moreover, the MSA required Biorasi to "ensure its employees and Subcontractors performing services [had] the level of skill necessary for BIORASI to meet its obligations under [the MSA]", train all employees on "BIORASI's Standard Operating Procedures and All Applicable Laws", and Biorasi agreed to "provide prompt written notice to [Alzamend] of any circumstances. . .[that] could adversely affect" the ALZN002 Trial. ECF No. [40] ¶ 41.

Under the Work Order's Task Ownership Matrix ("Task Matrix"), Biorasi expressly undertook the responsibility of creating and implementing communications-monitoring and data-management plans for the trial, including developing a Communication Plan, Monitoring Plan, Data Management Plan, and Medical Monitoring Plan consistent with professional and industry standards. ECF No. [40] ¶ 42. Under Section 1.4 of the Task Matrix, Biorasi was responsible for "[d]evelop[ing] material for training" including investigational product and supplies management. Protocol deviation handling, and queries. ECF No. [40] ¶ 43. The Project Documents required Defendant to "maintain strict segregation between blinded and unblinded personnel and communications, train and supervise site personnel regarding trial protocols, resolve protocol queries, escalate protocol deviations and safety concerns to Alzamend within 24 hours, monitor clinical operations for protocol and regulatory compliance, and take corrective action for any protocol breaches". ECF No. [40] ¶ 45.

On January 18, 2024, an unblinded study coordinator at IMIC preparing a Cryoport shipment became confused about how to handle Subject 1005's shipment following sham leukapheresis. The IMIC coordinator did not know that the blinding protocol required her to ship an empty Cryoport for the placebo subject to maintain the blind. Shipment of the empty Cryoport concealed the identity of the subject receiving the placebo because blinded personnel at Biorasi ordered the

shipments and blinded personnel at Alzamend received record of the shipments. ECF No. [40] ¶ 61. The IMIC study coordinator sought to resolve her confusion in accordance with protocol by calling her associate contact at Biorasi. ECF No. [40] ¶ 64. The Biorasi associate instructed the IMIC study coordinator to resolve her own query by sending an email requesting guidance to a larger group. ECF No. [40] ¶ 66. Upon direction of the Biorasi, the IMIC study coordinator sent an email to distribution lists for both the blinded and unblinded study personnel. The communication breached the study's double-blind design. ECF No. [40] ¶ 68.

The Biorasi associate subsequently contacted the Vice President of Project Management at Biorasi to report his conversation with the IMIC study coordinator. ECF No. [40] ¶ 70. The Biorasi VP then initiated a series of communications with First Excellence Research Group and claimed that blood samples for both sentinel subjects 1003 and 1005 had been missing for some time and later contending the active treatment for Subject 1003 might be defective or misidentified. ECF No. [40] ¶ 74; 79. An independent auditor later confirmed that neither sample had been misplaced. ECF No. [40] ¶ 76. Trial protocol would have suggested that the treatment earmarked for Subject 1003 was safe as the investigational product required 10-12 weeks to manufacture. As such, Subject 1005 who received sham leukapheresis in January 2024 could not have contributed to the product assigned to Subject 1003. ECF No. [40] ¶ 77.

Following the incident, Alzamend presented Biorasi with a protocol waiver, which would have allowed the study to continue. ECF No. [40] ¶ 81. The Biorasi VP asserted that administering the treatment to Subject 1003 could jeopardize the Principal Investigator's medical license. ECF No. [40] ¶ 82. On January 24, 2025, the Principal Investigator and First Excellence Research Clinic withdrew from the study. ECF No. [40] ¶ 83. Alzamend was in a blinded position and unaware this was happening. ECF. No. [40] ¶ 84. The Biorasi VP did not report her concerns about

potentially unaccounted-for blood samples to Alzamend. ECF No. [40] ¶ 86. With the sole clinical

site and its lead investigator gone, the ALZN002 Trial could no longer proceed. ECF. No. [40] ¶

85.

On January 30, 2024, Alzamend held a conference call with Biorasi, the Principal

Investigator, and the study coordinator at First Excellent Research Clinic where Alzamend learned

for the first time Defendant's accusation that a leukapheresis sample had been misplaced. ECF No.

[40] ¶ 89. On February 13, 2024, Biorasi resigned from the ALZN002 Trial and terminated the

MSA and Work Order with Alzamend, at which time Alzamend had already paid Defendant

$1,857,108.78. ECF No. [40] ¶ 102. Alzamend retained an independent clinical research

organization, Linical Co., Ltd ("Linical") to conduct an audit of the incident. ECF No. [40] ¶ 105.

The audit "confirmed no leukapheresis samples had been misplaced, and that the safety of subjects

1003 and 1005's had never been compromised". ECF No. [40] ¶ 106.

Alzamend asserts claims for (1) breach of contract, (2) breach of the implied covenant of

good faith and fair dealing, (3) negligence, (4) injurious falsehood, (5) violation of Florida's

Deceptive and Unfair Trade Practices Act ("FDUTPA"), and (6) fraudulent inducement/negligent

misrepresentation. *See* ECF No. [40]. Biorasi moves to dismiss and argues (1) Plaintiff failed to

plead or identify specific provisions of a contract between Plaintiff and Defendant that Defendant

has breached, (2) the good faith and fair dealing claim is duplicative of the breach of contract

claim, (3) Plaintiff's negligence claim fails to stand on its own allegations independent from the

breach of contract claim and cannot give rise to a separate tort claim, (4) Plaintiff's injurious

falsehood claim is insufficient as a matter of law, (5) the FDUTPA claim is improperly duplicative

of the breach of contract claim and is insufficiently pleaded, and (6) the fraudulent inducement

claim is also impermissibly duplicative of the contract claim and insufficiently pleaded. ECF No.
[49] at 2-3.

## II.   LEGAL STANDARD

### A.  Motion to Dismiss

A pleading in a civil action must contain "a short and plain statement of the claim showing that
the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although a complaint "does not need
detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic
recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S.
544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129
S.Ct. 1937, 173 L.Ed.2d 868 (2009) (explaining that Rule 8(a)(2)'s pleading standard "demands
more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Nor can a complaint
rest on "'naked assertion[s]' devoid of 'further factual enhancement.' " *Iqbal*, 556 U.S. at 678, 129
S.Ct. 1937 (quoting *Twombly*, 550 U.S. at 557, 127 S.Ct. 1955 (alteration in original))." To survive
a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to 'state a
claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570, 127 S.Ct.
1955).

When reviewing a motion to dismiss, a court, as a general rule, must accept the plaintiff's
allegations as true and evaluate all plausible inferences derived from those facts in favor of the
plaintiff. *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012); *Miccosukee
Tribe of Indians of Fla. v. S. Everglades Restoration Alliance*, 304 F.3d 1076, 1084 (11th Cir.
2002). Although the Court is required to accept all of the allegations contained in the complaint
and exhibits attached to the pleadings as true, this tenet is inapplicable to legal conclusions. *Iqbal*,
556 U.S. at 678, 129 S.Ct. 1937; *Thaeter v. Palm Beach Cnty. Sheriff's Office*, 449 F.3d 1342,

1352 (11th Cir. 2006) ("When considering a motion to dismiss ... the court limits its consideration to the pleadings and all exhibits attached thereto.") (internal quotation marks omitted).

## III.   DISCUSSION

### A.   Count I - Breach of Contract

Under Florida law, the elements of breach of contract are: (1) the existence of a contract, (2) a breach thereof, and (3) damages flowing from the breach. *Knowles v. C. I. T. Corp.*, 346 So.2d 1042, 1043 (Fla. 1st DCA 1977).

Biorasi moves to dismiss Count I for Defendant's failure to identify a specific provision of a contract that Biorasi breached. ECF No. [49] at 8. "In order to allege a material breach in accordance with the pleading standards required under the Federal Rules of Civil Procedure, the plaintiff must allege which provision of the contract has been breached." *Pierce v. State Farm Mut. Auto Ins. Co.*, 2014 WL 7671718, at *4 (S.D. Fla. Dec. 14, 2014) (citing supporting cases). This Court has dismissed claims for breach of contract where it is unclear what provision or obligation under the contract has been violated. *See Anderson v. Branch Banking and Trust Co.*, 56 F. Supp. 3d 1345, 1353 (S.D. Fla. 2014); *George v. Wells Fargo Bank, N.A.*, 2014 WL 61487 (S.D. Fla. Jan. 8, 2014) ("The Amended Complaint does not identify which provision of the [contract] has been breached and therefore runs afoul of *Twombly*."); *Gentry v. Harborage Cottages-Stuart, LLP*, 2008 WL 1803637, at *4 (S.D. Fla. Apr. 21, 2008) ("Where the facts pleaded are insufficient to determine which of the provisions may have been breached, the claim cannot survive a motion to dismiss."); *see also Whitney Nat. Bank v. SDC Communities, Inc.*, 2010 WL 1270264 (M.D. Fla. Apr. 1, 2010) (dismissing breach of contract claim where plaintiff failed "to allege the specific provision of the contract allegedly breached").

Biorasi claims that Alzamend does not "specify which of the many provisions of the MSA or Work Order" Biorasi breached. ECF No. [49] at 9. Biorasi contends *Gentry* is "instructive." ECF

No. [49] at 9. In *Gentry*, Plaintiffs entered into a purchase agreement with Defendant to purchase condominiums. Plaintiffs alleged the Defendants breached the terms of the purchase agreements by "(1) failing to complete construction in accordance with the representations made; (2) the poor quality of construction; and (3) the presence of a corrugated steel building on the Future Developments Site." No. 08-14020-CIV, 2008 WL 1803637, at *3 (S.D. Fla. 2008). The Court found the allegations "failed to provide sufficient reference to the term of the Purchase Agreement that was breached" and the Court was unable, upon its own review of the pleadings, to determine which provisions the allegations suggested Defendant breached. *Id*. Defendant argues the Amended Complaint sufferers "precisely the same failing as in *Gentry*." ECF No. [49] at 10.

Alzamend responds that "[t]he Amended Complaint identifies multiple contractual provisions breached by Biorasi, quoted directly from the operative agreements". ECF No. [60] at 10. First, that Biorasi breached its "core obligations to provide competent skilled staff, as well as train and assist clinical trial personnel under the MSA, the Work Order, and related documents". ECF No. [40] ¶ 116. Plaintiff cites specific contract language that Biorasi failed to "ensure its employees and Subcontractors performing services [had] the level of skill necessary for BIORASI to meet its obligations under [the MSA]" and to "[d]evelop material for training". *Id*. While Plaintiff's Amended Complaint does not specify a provision of the contract documents, a review of the Master Services Agreement finds the quoted language under Article 3, Section 3.1. ECF No [32] at 9.

Second, that Biorasi breached its "obligations to provide management and oversight to the ALZN002 Trial". ECF No. [40] ¶ 117. Alzamend cites specific contract language that Biorasi failed to provide "'[O]ngoing management and tracking of clinical supplies;' to perform '[c]linical supply management, including issue resolution and escalation as necessary;' to '[m]anage project operations;' to 'support the sites via the [clinical research associates] or directly with the site

Investigators as needed;' and to '[p]rovide. . . guidance to Investigator sites in adherence to protocol.'" *Id*. While Alzamend does cite specific language, it fails to cite which document the language comes from. The quoted language is not found in either the Master Services Agreement or the Clinical Trial Agreement.

Third, that Biorasi breached its contractual obligations "to maintain control of the investigational product and maintain adequate records of the receipt, shipment, and disposition of that investigational product" ECF No. [40] ¶ 118. Alzamend does not cite specific contractual language but rather asserts this obligation under 21 C.F.R. § 312.57(a). *Id*. at 50. Because Biorasi is required by law to adhere to the statutory requirements imposed by the Food and Drug Administration without receiving any consideration Alzamend, the obligation does not translate into a contractual one. *See Brush v. Miami Beach Healthcare Grp. Ltd.*, 238 F. Supp. 3d 1359, 1367 (S.D. Fla. 2017).

Fourth, that Biorasi breached "its duties to implement an adequate control system to control communications, resolve queries, and escalate questions about clinical trial procedures." ECF No. [40] ¶ 119. Plaintiff cites specific language that Biorasi failed to "report all major site related issues. . . in an expedited manner." Moreover, that Biorasi failed to perform "Query Resolution" and "[a]ssist sites and close out. . .safety generated queries". Further, Biorasi did not "[e]scalate, resolve and communicate between Sponsor and Biorasi study related issues/matters". *Id*. Alzamend fails to cite which document the language comes from. The quoted language is not found in either the Master Services Agreement or the Clinical Trial Agreement. Alzamend does allege "The Medical Monitoring Plan specifically required escalation of any 'potential quality issue with [the] study drug.'" ECF No [40] ¶ 119.

Fifth, that Biorasi "failed to implement effective controls to maintain the double blind and failed to provide 'prompt written notice' of circumstanced materially affecting the trial, as required under Section 2.8(b) of the MSA." ECF No. [40] ¶ 120. Specifically, Section 2.8(b) requires Biorasi to "provide prompt written notice to [Alzamend] of any circumstance, such as a delay, of which Biorasi becomes aware, and that Biorasi reasonably believes could adversely affect a Study or performance of the Services". *Id*. at ¶ 86. Alzamend alleges Biorasi breached that obligation when "the Biorasi VP failed to report her concerns about potentially unaccounted-for blood samples to Alzamend and failed to confirm the facts before threatening the Principal Investigator with professional sanctions". *Id*.

Sixth, that Biorasi "failed to provide services that complied with applicable approved protocol, professional standards, applicable laws, and Biorasi's own standard operating procedures, as required by the MSA." *Id*. at ¶ 121. Alzamend cites specific contract language under the MSA which Biorasi to perform services, "in compliance with this Agreement, the applicable approved protocol, [and] applicable professional standards. . . using a degree of skill, diligence and expertise consistent with industry standards". *Id*. at ¶ 40. The language appears in the MSA under Article 2, Section 2.1. ECF No. [32] at 5.

Considering the specific contract language included in the Amended Complaint, Plaintiff contends that Defendant's reliance on *Gentry* is misplaced. ECF No. [60] at 12. The Court agrees with Plaintiff that *Gentry* is distinguishable. In *Gentry*, the Court found the allegations failed "to provide sufficient reference to a specific term of the Purchase Agreements that was breached" and "[m]oreover, even after careful scrutiny of the Purchase Agreements, this Court is unable to discern from the pleadings which provision these allegations suggest Defendants have breached." No. 08-14020-CIV, 2008 WL 1803637, at *3 (S.D. Fla. 2008). Here, however, Alzamend cites directly

to Section 2.8 of the MSA, and additional quoted language can be found in Sections 2.1 and 3.1. As such, because Alzamend cites specific contract language, which can easily be found in the MSA, the Motion is denied as to Count I. Though Biorasi argues Alzamend fails to adequately plead damages, it cites no case law to support its argument.

### B.  Count II – Implied Covenant of Good Faith and Fair Dealing

Under Florida law, every contract contains an implied covenant of good faith and fair dealing which protects "the reasonable expectations of the contracting parties in light of their express agreement." *QBE Ins. Corp. v. Chalfonte Condo. Apartment Ass'n, Inc.*, 94 So.3d 541, 548 (Fla. 2012) (quoting *Barnes v. Burger King Corp.*, 932 F.Supp. 1420, 1438 (S.D. Fla. 1996)); *Centurion Air Cargo, Inc. v. United Parcel Serv. Co.*, 420 F.3d 1146, 1151 (11th Cir. 2005). The covenant is implied as a gap-filling default rule where the terms of the contract vest a party with substantial discretion, requiring that party to act in a commercially reasonable manner and limiting its ability to act capriciously to contravene the reasonable expectations of the contract counterparty. *See Karp v. Bank of Am.*, N.A., 2013 WL 1121256, at \*3 (M.D. Fla. Mar. 18, 2013); *Martorella v. Deutsche Bank Nat. Trust Co.*, 931 F.Supp.2d 1218, 1225 (S.D. Fla. 2013).

"A breach of the implied covenant of good faith and fair dealing is not an independent cause of action, but attaches to the performance of a specific contractual obligation." *Centurion,* 420 F.3d at 1151. The implied duty of good faith must, therefore, "relate to the performance of an express term of the contract. . .[and] cannot be used to vary the terms of an express contract." *Burger King Corp. v. Weaver,* 169 F.3d 1310, 1316 (11th Cir.1999) (quoting *Hospital Corp. of America v. Florida Med. Ctr., Inc.,* 710 So.2d 573, 575 (Fla. 4th DCA 1998) and *City of Riviera Beach v. John's Towing,* 691 So.2d 519, 521 (Fla. 4th DCA 1997). "As long as the implied covenant does not vary the express terms of the contract, the failure to perform a discretionary act in good faith may be a breach of the implied covenant of good faith and fair dealing." *Abels v.*

Case No. 25-cv-20481-BLOOM/Elfenbein

*JPMorgan Chase Bank, N.A.,* 678 F.Supp.2d 1273, 1278 (S.D.Fla.2009) (citing *Cox v. CSX Intermodal, Inc.,* 732 So.2d 1092, 1097–98 (Fla. 1st DCA 1999)). "Where the terms of the contract afford a party substantial discretion to promote the party's self-interest, the duty to act in good faith nevertheless limits that party's ability to act capriciously to contravene the reasonable expectations of the other party." *Wallace v. NCL (Bahamas) Ltd.,* 891 F.Supp.2d 1343, 1352 (S.D. Fla. 2012).

A claim for a breach of the implied covenant of good faith and fair dealing may be dismissed if it is duplicative of the breach of contract claim. *Shibata v. Lim* 133 F.Supp.2d 1311, 1320 (M.D. Fla. 2000). In *Shibata v. Lim*, the Court explained that a breach of the implied duty may be dismissed as redundant when the conduct allegedly violating the implied covenant is identical to the conduct alleged in the breach of contract claim. If the allegations do not go beyond the statement of a mere contract breach and rely on the same alleged acts to seek the same damages or relief, the implied covenant claim may be disregarded as superfluous. *Id.* Similarly, in *Popeyes Louisiana Kitchen, Inc. v. Florida Pop, LLC*, the court dismissed a claim for breach of the implied covenant because it was based on the same allegations as the breach of contract claim. 723 F.Supp.3d 1196 (S.D. Fla. 2024).

Biorasi moves to dismiss Count II as duplicative of Alzamend's breach of contract claim. Biorasi argues that the allegations in Paragraph 129(a)-(d) of the Amended Complaint mirror the alleged breaches in the first cause of action. Specifically, "subparts (a) and (c), the allegations of wrongfully withholding information from Alzamend are duplicative of Paragraphs 119 (failing to report all major site related issues) and 120 (failed to provide prompt written notice of circumstances affecting the trial)." Moreover, "[s]ubparts (b) and (d) regarding 'false assertions' and communications leading to the end of trial mirrors paragraph 122 and allegations of 'false accusations' and 'the collapse of the Trial.'" ECF No. [49] at 13.

Alzamend responds that its implied covenant claim:

> "Centers on Biorasi's affirmative misconduct that subverted the contract's core purpose and ensured the Trial would fail, including Biorasi's false hysteria regarding patient safety, affirmative efforts to prevent Alzamend from communicating with First Excellent Research Clinic, and baseless threats and communications that caused a clinical site to withdraw instead of executing a protocol deviation that would have saved the trial."

ECF No. [60] at 16. Alzamend argues that Defendant's reliance on cases such as *Costanza Y Cruz Medina v. Scottsdale Ins. Co.*, 2023 WL 11801301 (S.D. Fla. Mar. 7, 2023), *Live Nation Worldwide, Inc. v. Cohl*, 2011 WL 13223480 (S.D. Fla. May 3, 2011), and *Amica Mut. Ins. Co. v. Morowitz*, 613 F. Supp. 2d 1358 (S.D. Fla. 2009) are misplaced. In those cases, "the breaches of contract were 'virtually identical' to the breaches of the implied covenant". *Id*. Alzamend claims it has alleged distinct conduct by Biorasi that goes well beyond the mere failure to perform. Specifically, Biorasi "threatened a principal investigator", spread "false accusations about compromised treatments", and impeded communication between Alzamend and the clinical site – that was aimed at undermining the purpose of the agreement and depriving Alzamend of its benefit". *Id*. at 16-17.

A review of the Amended Complaint reveals its good faith and fair dealing claim is not duplicative of its breach of contract claim. Alzamend contends that Biorasi breached the implied covenant via the following:

a) wrongfully withholding critical information from Alzamend;
b) issuing baseless threats to clinical site personnel, including false assertions about patient safety and potential license loss;
c) preventing communication between Alzamend and First Excellent Clinic in an effort to control the narrative of the unblinding event; and
d) making communications that caused the withdrawal of a clinical site and prevented the execution of a protocol deviation that would have allowed the study to continue.

ECF No. [40] ¶ 129. Here, while the Court agrees with Biorasi that subparts (a) and (c) are duplicative of ¶¶ 119 and 120 of the breach of contract claim, the Court disagrees with Biorasi that subparts (b) and (d) mirror the allegations in ¶ 122 of the breach of contract claim. Here, as Alzamend points out, it relies on distinct conduct such as "threatening a principal investigator" and making communications that caused the withdrawal of a clinical site. ECF No. [60] at 16. As such, Alzamend's implied covenant of good faith and fair dealing claim is not "virtually identical" to the breach of contract claim and the Motion is denied as to Count II.

### C. Count III – Negligence

Defendant moves to dismiss Count III based on the independent tort doctrine, ECF No [49] at 13, which bars "a tort claim where the offending party has committed no breach of duty independent of a breach of its contractual obligations." *Alhassid v. Bank of Am., N.A.*, 60 F.Supp.3d 1302, 1318 (S.D. Fla. 2014). "The independent tort doctrine bars recovery in tort for actions that challenge a breach of contract[.]" *Perez v. Scottsdale Ins. Co.*, 19-cv-22346-GAYLES, 2020 WL 607145, at * 2 (S.D. Fla. Feb. 7, 2020). Pursuant to Florida's independent tort doctrine, a "Plaintiff may not repackage [ ] breach of contract claims as independent actions in tort." *Dorvil v. Nationstart Mortgage LLC*, 17-cv-23193-MARTINEZ, 2019 WL 1992932, at *17 (S.D. Fla. Mar. 26, 2019). Therefore, "[t]o bring a tort claim concurrently with a contract claim, plaintiffs must plead a tortious action committed separate and apart from the breach of contract." Perez, 2020 WL 607145 at *2 (citing *Azure, LLC v. Figueras Seating U.S.A., Inc.*, 12-cv-236700-UU, 2013 WL 12093811, at *6 (S.D. Fla. July 18, 2013)).

Defendant argues Plaintiff's negligence claim alleges breaches substantively duplicative of the breach of contract claim. ECF No. [49] at 13. Defendant provides the following chart in support:

| Breach of Contract – First Cause of Action | Negligence – Third Cause of Action |
|---|---|
| "failed to implement effective controls to maintain the double blind" (Am. Compl. ¶ 120) and "[t]hese failures directly caused an irreversible unblinding of the study[.]" (¶ 122) | "failing to implement appropriate safeguards to prevent unblinding" (¶ 137.) |
| "Biorasi also breached its contractual obligations to maintain control of the investigational product and maintain adequate records of the receipt, shipment, and disposition of that investigational product." (¶ 118) | "failing to maintain proper oversight of the shipping and handling of investigational product" (¶ 137) and "failing to maintain required records for the receipt, shipment, and disposition of the investigational product subject to the Trial" (¶ 139) |
| "Biorasi's breaches also caused false accusations regarding misplacement of the investigational product and unnecessary disruption of Trial operations. Biorasi failed to satisfy these obligations, resulting in operational confusion, miscommunication, and ultimately the collapse of the Trial." (¶ 122) | failing to diligently investigate the allegations of missing blood samples, recklessly impugning the integrity of the trial, falsely asserting that patient safety was at risk, and baselessly asserting that the medical license of the Principal Investigator was at risk if he continued with the study (¶ 137) (see also ¶¶ 141-142) |
| "Biorasi failed to provide services that complied with applicable approved protocol, applicable professional standards, applicable laws, and Biorasi's own standard operating procedures, as required by the MSA." (¶ 121) | "failing to monitor the study and ensure that it was conducted according to plan, protocol, standard operating procedures, good clinical practice, and applicable regulatory requirements" (¶ 139) |

ECF No. [49] at 14.

Plaintiff responds that "[t]he independent tort doctrine does not apply where, as here, the [D]efendant owes a duty of care independent of the contract." ECF No. [60] at 17. "The distinction between a breach of contract and a tort is the source of the duty breached by the defendant. If a contract imposes a duty and the defendant breaches that duty, the plaintiff must sue for breach of contract. If society imposes the duty, the plaintiff must sue in tort." *Travelers Indem. Co. of Connecticut v. Richard McKenzie & Sons, Inc.*, 326 F. Supp. 3d 1332, 1345 (M.D. Fla. 2018), aff'd, 10 F.4th 1255 (11th Cir. 2021).

In its Amended Complaint, Plaintiff claims, "[t]he special relationship between Alzamend and Biorasi created an independent duty". ECF No. [40] ¶ 134. Plaintiff argues, "in its privileged

position, Biorasi had a duty to protect Alzamend's interests, including its economic interests in the Trial." ECF No. [60] at 18. Additionally, Defendant had "regulatory and statutory obligations creating a duty of care." ECF No. [60] at 19. Moreover, the independent tort doctrine "does not bar tort claims where the alleged misconduct involves a breach of professional standard of care.". ECF No. [60] at 19.

As to the special relationship and professional standard of care, Plaintiff argues that because it was blinded, Defendant sat in a privileged position of trust and confidence. ECF No. [60] at 18. As such, Plaintiff claims it relied on Defendant to protect its interests, and these peculiar facts and specific circumstances justify imposing a duty of care. *Id*. Plaintiff cites to *Tiara Condo. Ass'n, Inc. v. Marsh, USA, Inc.,* for the general proposition that a special relationship between the parties can trigger a heightened duty of care. 991 F.Supp.2d 1271, 1282 (S.D. Fla. 2014). However, the court in *Tiara* was specifically concerned with the common law tort duties of insurance brokers as "Florida law has long recognized that an insurance broker owes a fiduciary duty of care to the insured." *Id*. As Biorasi points out, Alzamend "fails to point to a single case wherein an entity such as [Biorasi] was deemed a profession such as an architect, doctor, or lawyer." ECF No. [62] at 9.

As to Biorasi's regulatory and statutory obligations, Alzamend cites no case law to support its claim that 21 C.F.R. § 312.50 or § 312.57 create an assumed duty of care. ECF No. [60] at 19. To the contrary, "not every violation of a regulation creates a privately enforceable negligence duty." *In re Jan. 2021 Short Squeeze Trading Litig.*, 76 F.4th 1335, 1353 (11th Cir. 2023) (quoting *Est. of Johnson v. Badger Acquisition of Tampa LLC*, 983 So. 2d 1175, 1182-83 (Fla. 2nd DCA 2008). Especially here, a tort duty arising out of federal regulations would "invite an unusual federal encroachment into Florida common law". *Id*. To that end, the Eleventh Circuit has stated, "where

the plaintiffs allege economic loss arising from a contractual relationship, more is necessary to show that a regulation creates a privately enforceable tort duty." *Id*. Because Alzamend fails to establish a duty independent from the contract, Count III is dismissed with prejudice as duplicative of the breach of contract claim.

### D.  Count IV – Injurious Falsehood

 "In order to sustain a claim for injurious falsehood, Plaintiff must adequately allege: (1) a falsehood; (2) published or communicated to a third party; (3) the Defendant know that the falsehood would likely induce others not to deal with the Plaintiff; (4) the falsehood did play a material and substantial part in inducing others not to deal with the Plaintiff; and (5) special damages." *Springboard Media, LLC v. Augusta Hitech Soft Sols., LLC*, No. 22-20191-CIV, 2022 WL 18465128, at *5 (S.D. Fla. June 14, 2022) (citing *Bothmann v. Harrington*, 458 So. 2d 1163, 1168 (Fla. 3d DCA. 1984)).

Biorasi moves to dismiss Alzamend's injurious falsehood claim, arguing that it "fails as a matter of law because it fails to plausibly allege any defamatory statement *about Plaintiff* or special damages." ECF No. [49] at 15. Alzamend responds that "the Amended Complaint specifically alleges the Principal Investigator published information about 'the integrity of the leukapheresis samples' and 'false statements regarding the potential danger to the patients.'" ECF No. [60] at 20. Biorasi contends that such statements are not defamatory of Alzamend, because Alzamend does not allege any involvement in the creation of the leukapheresis samples. ECF No. [49] at 60. To that end, Alzamend argues "there is no requirement that the falsehood explicitly be about Plaintiff or its product as long as the falsehood induces the third-party to refrain from dealing with the plaintiff." *Id*. at 21.

The Court agrees with Alzamend. "The gist of the tort of injurious falsehood is the 'intentional interference with another's economic relations.'" *Salit v. Ruden, McClosky, Smith,*

*Schuster & Russell, P.A.*, 742 So. 2d 381, 386 (Fla. 4th DCA 1999) (quoting *Procacci v. Zacco*, 402 So. 2d 425, 426 (Fla. 4th DCA 1981)). As such, the critical requirement is not whether a plaintiff was the subject of the falsehood, but whether a plaintiff can show economic harm from the falsehood. "The tort of injurious falsehood protects the economic interests of an injured party against pecuniary loss, in contrast to defamation, which protects the personal reputation of the injured party." *Francois v. City of N. Miami Beach Police Dep't,* No. 1:25-CV-21375-JEM, 2025 WL 3216638, at *8 (S.D. Fla. Oct. 27, 2025), report and recommendation adopted, No. 25-21375-CIV, 2025 WL 3215884 (S.D. Fla. Nov. 18, 2025) (citing *Callaway Land & Cattle Co., Inc. v. Banyon Lakes C. Corp.*, 831 So. 2d 204 (Fla. 4th DCA 2002).

Here, Alzamend sufficiently states a claim for injurious falsehood. It alleges Biorasi published falsehoods to the Principal Investigator about the integrity of the leukapheresis samples and regarding potential danger to the patients in trial, ECF No. [40] ¶ 146, Biorasi knew or should have known its statements were false, *Id*. ¶ 147, Biorasi knew the falsehood would induce the Principal Investigator to withdraw himself and First Excellence Clinic from the Trial causing harm to Alzamend, *Id*. ¶ 148, and "as a direct and proximate result of Biorasi's falsehoods, Alzamend has suffered special damages in the form of the lost money invested and value accumulated in setting up and conducting the preliminary stages of the failed Trial" and has been damaged in an amount estimated to exceed $1,800,000.00. *Id*. ¶ 150.

Biorasi argues Alzamend has failed to properly plead special damages because the alleged damages "[do] not directly and immediately flow from any alleged false statement." ECF No. [49] at 20. Biorasi contends this case is like *Springboard Media, LLC v. Augusta Hitech Soft Sols., LLC*, in which the Court dismissed an injurious falsehood claim because the plaintiff failed to establish a pecuniary loss that has been realized or liquidated. No. 22-20191-CIV, 2022 WL 18465128, at

*6 (S.D. Fla. June 14, 2022).  Here, as Alzamend points out, it seeks "recovery for the loss of its out-of-pocket costs caused by disparaging statements, which constitutes special damages for the purposes of injurious falsehood." ECF No. [60] at 21-22. And unlike in *Springboard Media, LLC*, special damages are pled in more than a conclusory manner. *See Moon & Star Logistics, LLC v. Direct Traffic Sols., Inc.*, No. 23-CV-81300-RLR, 2023 WL 9283969, at *3 (S.D. Fla. Dec. 20, 2023) (quoting *Anderson v. Smith*, No. 19-CV-222-J20JRK, 2020 WL 10058207, at *3 (M.D. Fla. Mar. 24, 2020)), report and recommendation adopted, No. 23-CV-81300, 2024 WL 167392 (S.D. Fla. Jan. 16, 2024). As such, the Motion is denied as to Count IV.

### E.  Count V – Florida Deceptive and Unfair Trade Practices Act

To prevail on its FDUTPA claim, Alzamend must prove three elements: "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Am. Mariculture, Inc. v. Syaqua Americas, Inc.*, 2021 WL 2315003, *4 (M.D. Fla. June 7, 2021) (quoting *Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. 2d DCA 2006)). An act is deceptive within the meaning of the FDUTPA where a party makes a "representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment." *Peterbrooke Franchising of Am., LLC v. Miami Chocolates, LLC*, 312 F. Supp. 3d 1325, 1343 (S.D. Fla. 2018). Furthermore, "[p]roof of actual damages is necessary to sustain a FDUTPA claim." *Nazario v. Pro. Acct. Servs., Inc.*, 2017 WL 1179917, *5 (M.D. Fla. Mar. 30, 2017).

Biorasi argues that dismissal of Count V is warranted because Alzamend's FDUTPA claim is improperly duplicative of the breach of contract claim. ECF No. [49] at 21. Alzamend responds that its FDUTPA claim "is not that Biorasi failed to perform under the contract, it is that Biorasi made fatal representations as to its qualifications. . . all for the purpose of securing the contract." ECF No [60] at 29.

As Biorasi points out, "'A mere intentional breach of contract or interference with that contract' does not constitute a violation of FDUPTA." ECF No. [49] at 21 (citing *Pinnacle Foods of California, LLC v. Popeyes Louisiana Kitchen, Inc. Rest. Brands Int'l, Inc.,* No. 21-21555-CIV, 2022 WL 17736190, at *11 (S.D. Fla. Dec. 16, 2022) (quoting *Burger King Corp. v. Darryl D. Berry*, No. 20-cv-21801, 2020 U.S. Dist. LEXIS 256918, at *28 (S.D. Fla. Sept. 4, 2020)). However, "Florida law permits a FDUTPA claim to travel with a related breach of contract claim if the FDUTPA claim challenges the acts underlying or 'giving rise' to the breach, and does not 'rely solely on a violation of the Agreement as a basis for assertion of a FDUTPA claim." *Kenneth F. Hackett & Assocs. v. GE Capital Info. Tech. Solutions, Inc.*, 744 F. Supp. 2d 1305, 1313 (S.D. Fla. 2010).

> Here, the Amended Complaint alleges:

> In both its marketing and its direct dealings with Alzamend, Biorasi made affirmative representations regarding its capabilities including its ability to secure a leukapheresis center for the trial, to provide staff with Alzheimer's study experience, to oversee site management, to maintain blinded study protocols, and to ensure trial integrity.

ECF No. [40] ¶ 154. Moreover:

> These representations were false or misleading. Biorasi lacked the operational readiness, personnel training, and internal safeguards required to fulfill its obligations. Despite its representations, Biorasi did not have the ability to secure a prioritized leukapheresis center, failed to implement adequate escalation procedures, and failed to train its staff on critical protocol elements essential to patient safety and study integrity.

ECF No. [40] ¶ 155.

As Alzamend points out, those allegations go beyond "that Biorasi breached the MSA; it alleges that Biorasi actively misled Alzamend about its capabilities in order to induce Alzamend to partner with it." ECF No. [60] at 23.

Case No. 25-cv-20481-BLOOM/Elfenbein

Biorasi replies that "Plaintiff's argument, taken on its face, appears to be that Defendant had an extra-contractual duty to provide additional services nowhere enumerated in the Parties' contractual documents." However, a "'claim under FDUTPA is not defined by the express terms of a contract but instead encompasses unfair and deceptive practices arising out of business relationships,' including oral representations and misrepresentations that precede the execution of a contract." *Dorestin v. Hollywood Imports, Inc.*, 45 So. 3d 819, 832 (Fla. 4th DCA 2010) (quoting *Siever v. BWGaskets, Inc.,* 669 F.Supp.2d 1286, 1293 (M.D. Fla. 2009)).

The Court finds that, as alleged Alzamend properly states a FDUTPA claim, and the Motion is denied as to Count V.

### F.  Count VI – Fraudulent Inducement/Negligent Misrepresentation

In Count VI of the Amended Complaint, Alzamend alleges, "Prior to the execution of MSA and Work Order, Biorasi made a series of material false statements for the express purpose of inducing Alzamend to retain Biorasi as the CRO for the ALZN002 clinical trial." ECF No. [40] ¶ 162. Alzamend claims the false representations included but are not limited to 1) representations that Biorasi had preexisting relationships with leukapheresis centers and that the sites it was proposing were capable of performing leukapheresis for the ALZN002 Trial and 2) Biorasi also made representations that it would assign an experienced team to the study—individuals with particularized expertise and recent experience in neurodegenerative clinical trials from work done on a prior Alzheimer's gene therapy trial. *Id*. ¶ 163.

To state a claim for fraudulent inducement, a plaintiff must allege that (1) defendant made a false statement concerning a material fact; (2) defendant knew the representation was false; (3) defendant intended the representation to induce plaintiff's reliance; and (4) plaintiff was injured in justifiable reliance on the misrepresentation. *See Alvarez v. Royal Caribbean Cruises, Ltd.*, 905 F. Supp. 2d 1334, 1342 (S.D. Fla. 2012) (citation omitted). Additionally, because a claim

for fraudulent inducement must also satisfy Rule 9(b)'s particularity requirement, the allegations in the Amended Complaint must set forth "some delineation of the underlying acts and transactions which are asserted to constitute fraud." *Kronotex USA, LLC. v. Hodges*, No. 07-21939 CIV, 2008 WL 11406179, at *4 (S.D. Fla. Apr. 25, 2008) (citation omitted).

Biorasi moves to dismiss Count VI, arguing "any alleged representation not contained in the Parties' contractual documents cannot form the basis for such a claim, and any alleged representation that is expressly memorialized in the Parties' contract documents is foreclosed for not being an independent tort." ECF No. [49] at 23. Alzamend responds that "a party may bring a fraudulent inducement or negligent misrepresentation claim based on statements or assurances that are not expressly included in the contract, so long as they were made prior to execution and were intended to induce agreement." ECF No. [60] at 25.

Biorasi relies on *Eclipse Medical, Inc. v. Hydro-Surgical Instruments*, *Inc*., for the general proposition that "if the representation was not important enough to make it into the comprehensive written agreement, it must not have been material." ECF No. [49] at 23 (quoting *Eclipse Med., Inc. v. Am. Hydro-Surgical Instruments, Inc.*, 262 F. Supp. 2d 1334, 1342 (S.D. Fla. 1999), aff'd sub nom. *Eclipse Med., Inc. v. Am. Hydro-Surgical*, 235 F.3d 1344 (11th Cir. 2000)). As Alzamend points out, *Eclipse Med, Inc.* is distinguishable. ECF No. [60] at 25.

In *Eclipse Med. Inc.,* the alleged misrepresentation at issue was directly contradicted by the terms of the contract. 262 F. Supp. 2d 1334, 1343. There, the court found it "patently unreasonable for the Distributors to rely on a promise that the Agreement would be renewed annually *ad infinitum* based on performance where the Agreement specifically and unambiguously creates only a single renewal term based on performance." *Id*.

Here, Biorasi concedes its representations before execution of the contract that it had preexisting relationships with leukapheresis centers, and the sites were capable of performing leukapheresis for the ALZN002 Trial were never expressly set forth in an agreement. As such, because the alleged misrepresentations are not contradicted by terms expressly set forth in the contract and Alzamend was injured in justifiable reliance based on the misrepresentations, the Court finds Alzamend properly states a claim for fraudulent inducement. *See Medalie v. FSC Sec. Corp.*, 87 F.Supp. 1295, 1306 (S.D. Fla. Feb. 1, 2000) (upholding plaintiff's fraudulent inducement claim where "defendant made material representations on which the plaintiffs relied to induce them to purchase … securities" and "had the plaintiffs been told the true risks involved in the investments, they could have protected themselves by investing less money or by contracting for a guaranteed return from the defendant.") The Motion is denied as to Count VI.

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant's Motion**, ECF No. [49]** is **DENIED** as to Counts 1, 2, 4, 5, and 6.

2. Defendant's Motion, **ECF No. [49]**, is **GRANTED** as to Count 3.

3. Count 3 is **DISMISSED WITH PREJIDUCE.**

4. The Defendant shall file an Answer to the Amended Complaint **by February 13, 2026.**

**DONE AND ORDERED** in Chambers at Miami, Florida, on January 30, 2026.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

cc:     counsel of record