# Exhibit D

**Exhibit D - List of Improper Factual or Legal Conclusions**

| Rebuttal Report Page # | Rebuttal Expert Opinion |
|---|---|
| 19-31 | Extended factual narrative under the heading "Summary of Events." |
| 33 | Dr. Iftikhar: "In fact, Biorasi recognized this and did engage all appropriate domain experts that have relevant experience and rightly relied on them for technical input." |
| 34 | **Dr. Iftikhar**: "Biorasi worked with Alzamend in approving the additional specialized partners, **and it was Alzamend that did not include Biorasi on part of the process**. This is documented in the Note to File dated March 8, 2024 that 'Alzamend internally vetted vendors contracted by Alzamend, and no documentation was provided to Biorasi for the following vendors…' and includes a list of vendors that had contracts executed between Alzamend and the vendor, which included 'IMIC (acting as leukapheresis center).' An additional note states the following: 'All management of these vendors was performed by Alzamend during the course of the study.' **It is evident** that Biorasi was diligent in making sure the appropriate vendors were a part of the trial, and Biorasi followed industry standards in building a site strategy for the success of the clinical trial." (Emphasis added). |
| 34-35 | **Dr. Iftikhar**: "**This is not supported by the factual record**. Biorasi had SOP PM-024 Transitioning of Team Members in place for the transition of project team members. Team Member Transition Form, FROM-PM-01, for protocol ALZN002-01 was completed on October 19, 2024 to transition the project direct role from Sergey Pavelenko to Nancy Newark. The Team Member Form documents various transition activities, including access to appropriate systems, protocol training to be completed by October 27, 2023, and review of tasks relevant to the role." (Emphasis added). |
| 36-38 | **Dr. Friedrich**: Factual narrative followed by: "[f]inally, in the May 26, 2023 email described above, **it is also apparent that Alzamend was aware** of the qualifications of the IMIC coordinator and approved her role in shipping. Further, **Alzamend was aware** of the delinquency of IMIC in following through with training and other study related documentation, as Alzamend often broke the communication plan to follow up directly with IMIC, while not copying Biorasi." (Emphasis added). |
| 45 | **Dr. Friedrich**: "The instructions sent by Biorasi on communication expectations were **straightforward**: there was only one unblinded CRA to contact for unblinded communications, all others were blinded." (Emphasis added). |
| 50-53 | **Dr. Iftikhar**: Factual narrative which includes, "[m]any of these actions taken by Biorasi **were intended to debrief with IMIC on the qualification run and other related leukapheresis processes** IMIC was responsible for, and ultimately to correct issues moving forward." (Emphasis added). |
| 57-58 | **Dr. Friedrich and Dr. Iftikhar**: "**It is also important to note that Alzamend had a significant role in determining unblinding procedures**. Per the March |

1

| | |
|---|---|
| | 15, 2023 weekly sponsor meeting minutes, Alzamend was assigned as the action item owner for providing unblinding procedures. Biorasi conducted several meetings with their unblinded biostatistician internally and with Alzamend in October of 2023 regarding statistical anonymization of data. Biorasi shared concerns during the October 26, 2023 weekly sponsor meeting that the data transfer and anonymization process could 'lead to inadvertent unblinding based on recent discussions/requests from the Alzamend team and cause significant risk to the study integrity.' A decision was made to implement an anonymized participant number early in all documentation to prevent unblinding, schedule a separate call to review and implement the process promptly, and have the Biorasi unblinded biostatistician join weekly sponsor calls. Documentation from the weekly sponsor meeting on November 2, 2023 shows that Alzamend requested assistance documenting an Unintentional Unblinding Plan. **However, manual and guideline updates were deemed out of scope at this time under the current contract**, as Biorasi was limited to the original scope pending Alzamend's approval of the Change Order. Therefore, **Biorasi was actively involved in identifying, planning for and mitigating the risk of unintentional unblinding to the extent the approved WO allowed**." (Emphasis added). |
| 58 | **Dr. Friedrich and Dr. Iftikhar**: "Alzamend designed blinding procedures in the study protocol and related protocol materials." (Emphasis added). |
| 59 | **Dr. Friedrich and Dr. Iftikhar**: "**There is no evidence to support** that the unblinded CRA did not know the answer or how to find the answer, and as discussed further in Section 5.3.4, there are various reasons why someone would request for a conversation to be put into an email, including for documentation or clarification. In replying to the IMIC coordinators email, the unblinded Biorasi CRA provided the correct information and the flowchart from the IP Manual (Figure 6). Again, Dr. Hausheer relies on unverified information regarding a phone call he was not party to." (Emphasis added). |
| 61-62 | **Dr. Friedrich**: Factual narrative followed by: "[b]ased on my review of the materials and analysis above, **there is no evidence that the Biorasi CRA improperly instructed the IMIC coordinator**. Therefore, Dr. Hausheer's opinion that an email was instructed because of Biorasi not knowing the answer to the IMIC coordinator's question is speculative and cannot be relied upon within a reasonable degree of scientific certainty." (Emphasis added). |
| 65 | **Dr. Iftikhar**: "Based on information I reviewed, **there was timely escalation of the unblinding event to Alzamend. Therefore, Dr. Hausheer's statement is factually incorrect**, and his opinion on there not being timely escalation to the sponsor cannot be relied upon within a reasonable degree of scientific certainty." (Emphasis added). |
| 67-69 | **Dr. Friedrich**: Factual narrative followed by: "[t]aken together, **it is evident that there were multiple concurrent events that would have reasonably put Biorasi in contact with FERG in the days surrounding the unblinding event**. |

2

| | |
|---|---|
| | Without knowing precisely what was communicated over the phone, it is equally reasonable to assume that the late shipment of IP was conflated by FERG themselves as being related to the need to delay treatment and meant that the IP was unaccounted for. **Based on the details of the shipping delay, the IP heading to FERG was never unaccounted for**.<br><br>Based on my review of the materials and analysis above, communication between Biorasi and FERG on January 18-19, 2024 was necessary and the decision to postpone the scheduled treatment on Monday needed to occur rapidly. **Dr. Hausheer provides no evidence that this communication occurred between Biorasi and the FERG PI. Furthermore, there is evidence that it did not occur at all, according to a signed declaration from Nancy Newark**. Therefore, Dr. Hausheer's opinions based on specifics of those phone conversations cannot be relied upon within a reasonable degree of scientific certainty."<br><br>(Emphasis added). |
| 69 | **Dr. Friedrich**: "**There is no evidence** that there was any 'missing, lost, mixed up or mislabeled study drug product' for Biorasi to report to the Sponsor, as the shipping of IP was appropriately tracked." (Emphasis added). |
| 71-73 | **Dr. Friedrich and Dr. Iftikhar**: Factual narrative followed by: "[t]he above events are indicative of the various changes to the trial due to Alzamend's actions that the FERG coordinator may have been referring to her in January 19, 2024 email." |

3

13199773-4